**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ————————————————————— x | |
| Jeannie Patora, individually on : | |
| behalf of herself and all others similarly : | |
| situated, : | Case No. |
| : | |
| Plaintiff, : | |
| v. : | |
| : | |
| : | **CLASS ACTION** |
| Tarte, Inc., : | **COMPLAINT** |
| : | |
| Defendant. : | <u>**JURY TRIAL DEMANDED**</u> |
| : | |
| : | |
| ————————————————————— x | |

Plaintiff, Jeannie Patora (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

<u>**NATURE OF THE ACTION**</u>

1.      This action seeks to remedy the deceptive and misleading business practices of Tarte, Inc. (hereinafter "Defendant") with respect to the marketing, labeling and sales of all products from Tarte's "high-performance naturals" line of products ("Products") throughout the State of New York and throughout the country:

2.      Defendant manufactures, sells, and distributes the Products using a marketing and advertising campaign centered around claims that appeal to health-conscious consumers, *i.e.*, that their Products are natural.  Moreover, Defendant's website states that, "We believe in high performance AND natural…. We never compromise when it comes to what we put on our skin and neither should you… It's time to rethink Natural."  However, Defendant's advertising and

1

marketing campaign is false, deceptive, and misleading because the Products contain synthetic ingredients.

3.      Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentations that the Products natural when purchasing the Products.  Plaintiff and Class Members paid a premium for the Products over and above comparable products that did not purport to be natural.  Given that Plaintiff and Class Members paid a premium for the Products based on Defendant's misrepresentations that they are natural, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

4.      Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350, the consumer protection statutes of all 50 states, and the Magnuson-Moss Warranty Act.  Defendant breached and continues to breach their express and implied warranties regarding the Products.  Defendant has been and continues to be unjustly enriched.  Accordingly, Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

5.      Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in food, cleaning products, bath and beauty products and everyday household products.  Companies such as the Defendant have capitalized on consumers' desire for purportedly "natural products."  Indeed, consumers are willing to pay, and have paid, a premium for products branded "natural" over products that contain synthetic ingredients.  In 2015, sales of

2

natural products grew 9.5% to $180 billion.[1]  Reasonable consumers, including Plaintiff and the

Class Members, value natural products for important reasons, including the belief that they are

safer and healthier than alternative products that are not represented as natural.

6.    Despite the Products containing a number of synthetic ingredients, Defendant

markets the Products as natural.

7.    The primary venues for purchasing the Products are in retail stores, where the

Products are displayed at a gondola or other in-store displays.  These in-store displays are the

most common way that Defendant represents to consumers that the Products are "natural" at the

point of sale.

8.    For example, Plaintiff purchased the Products at Sephora one of Defendant's

largest retailers.  In deciding to purchase the Products, Plaintiff viewed and relied upon an in-

store display stand like the one depicted below, which advertised the Products as natural:

---

[1] *Natural Products Industry Sales up 9.5% to $180bn Says NBJ,* FOOD NAVIGATOR,
http://www.foodnavigator-usa.com/Markets/EXPO-WEST-trendspotting-organics-natural-
claims/(page)/6; *see also*  Shoshanna Delventhal, *Study Shows Surge in Demand for "Natural"
Products*, INVESTOPEDIA (February 22, 2017),
http://www.investopedia.com/articles/investing/022217/study-shows-surge-demand-natural-
products.asp (Study by Kline Research indicated that in 2016, the personal care market reached
9% growth in the U.S. and 8% in the U.K. The trend-driven natural and organic personal care
industry is on track to be worth $25.1 million by 2025); *Natural living: The next frontier for
growth? [NEXT Forecast 2017]*, NEW HOPE NTWORK (December 20, 2016),
http://www.newhope.com/beauty-and-lifestyle/natural-living-next-frontier-growth-next-forecast-
2017.



9.    In addition, Defendant's website also markets the Products as natural as depicted below:







10.    These representations are false, misleading, and deceptive because the Products contain multiple ingredients that are synthetic.  For example, the Tarte Skincare Frxxxtion Stick contains butylene glycol, glycerin, cocamidopropyl betaine, kaolin, phenoxyethanol and sodium benzoate; The Tarte Skincare Brazilliance Self-tanning Face Towelettes contain glycerin, butylene glycol, xylitol, citric acid, caprylyl glycol, phenoxyethanol, potassium sorbate, tocopheryl acetate, and limonene; the Tarte Skincare Pack Your Bags Undereye Patches contain glycerin, butylene glycol, polysorbate 20, tocopherol, and phenoxyethanol.

6

11.     Defendant's representations that the Products are natural is false, misleading, and deceptive because the Products contain multiple ingredients that are, as explained below, synthetic.

a.     **Citric Acid** is (2-hydroxy-propane-1, 2,3-tricarboxylic acid) is a synthetic substance. While the chemical's name has the word "citric" in it, citric acid is no longer extracted from the citrus fruit but industrially manufactured by fermenting certain genetically mutant strains of the black mold fungus, *Aspergillus niger*.

b.     **Butylene Glycol** is a synthetic substance prepared by the aldol condensation of acetaldehyde followed by catalytic hydrogenation. *See* 21 C.F.R. §172.712.

c.     **Cocamidopropyl Betaine (Coco Betaine)** is a synthetic surfactant.[2]

d.     **Tocopheryl Acetate (Tocopherol)** is a synthetic, inert ingredient used pre and post-harvest as an ingredient in pesticide formulations applied to growing crops or to raw agricultural commodities after harvest. *See* 40 C.F.R. §180.910.

e.     **Caprylyl Glycol** is a preservative blend with phenoxyethanol and chloroxylenol.[3]

f.     **Potassium Sorbate** is a synthetic preservative.[4] *See* 21 C.F.R. § 582.3640. It is created by using potassium hydroxide (KOH) to neutralize sorbic acid (C6H8O2). The resulting potassium sorbate may be crystallized from aqueous ethanol. Studies have shown Potassium Sorbate to have genotoxic effects on humans and

---

[2] http://www.fda.gov/downloads/CombinationProducts/JurisdictionalInformation/RFDJurisdictionalDecisions/RedactedDecisionLetters/UCM113805.pdf.

[3] http://www.paulaschoice.com/cosmetic-ingredient-dictionary/definition/caprylyl-glycol.

[4] http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm274535.htm.

other mammals.[5]  It causes chromosomal aberrations in cells, which can trigger the development of cancer.[6]

g.  **Sodium benzoate** is a synthetic preservative.[7]  Sodium benzoate is produced by the neutralization of benzoic acid with sodium hydroxide, or by adding benzoic acid to a hot concentrated solution of sodium carbonate until effervescence ceases.  The solution is then evaporated, cooled and allowed to crystalize or evaporate to dryness, and then granulated.  It does not occur naturally.[8]  Sodium benzoate has been shown to cause DNA damage and chromosomal aberrations.[9]  When sodium benzoate combines with ascorbic acid (an ingredient common in many food products) the two substances can react to produce benzene, which is a highly toxic carcinogen.

h.  **Limonene** is a synthetic substance and adjuvant.  *See* 21 C.F.R. § 182.60.

i.  **Polysorbate-20** is a synthetic emulsifier and/or surface-active agent.  *See* 21 C.F.R. § 178.3400.

j.  **Xylitol** is a synthetic sweetening agent derived from the crushed fibers of sugar cane in birch wood and/or corn through a harsh multi-step chemical reaction that involves the use of sulfuric acid, calcium oxide, phosphoric acid and active charcoal.  Typical production of xylitol begins from a plant product xylan, which

---

[5] Sevcan Mamur et al., *Does Potassium Sorbate Induce Genotoxic or Mutagenic Effects in Lymphocytes?*, TOXICOLOGY IN VITRO 790, 793 (2010).
[6] *Id.*
[7] http://www.ewg.org/skindeep/ingredient/705989/SODIUM_BENZOATE/; http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm274535.htm.
[8] 21 C.F.R. § 184.1733.
[9] N. Zengin et al., *The Evaluation of the Genotoxicity of Two Food Preservatives: Sodium Benzoate and Potassium Benzoate*, FOOD AND CHEMICAL TOXICOLOGY 763, 764-68 (2011).

is hydrolyzed into xylose and catalytically hydrogenated into xylitol, thought a comprehensive chemical process.  Moreover, commercial production of xylitol often requires the use of genetically modified corn, which cannot be described as natural.

k.    **Kaolin** (also known as clay) consists of hydrated aluminum silicate.  *See* 21 C.F.R. § 186.1256.

l.    **Phenoxyethanol** is toxic by definition under federal law, based on animal testing

m.    demonstrating that the substance is lethal even in very small doses.  Even short exposure could cause serious temporary or residual injury.  It is toxic to the kidneys, the nervous system, and the liver.  It is extremely hazardous in case of eye contact and very hazardous in case of skin contact (defatting the skin and adversely affecting the central nervous system and peripheral nervous system, causing headaches, tremors, and central nervous system depression).  It is also very hazardous in case of ingestion or inhalation.  It degrades into substances that are even more toxic.  It is a category 2 germ cell mutagen, meaning that it is suspected of mutating human cells in a way that can be transmitted to children conceived after exposure.  Phenoxyethanol is an ethylene glycol ether, which is known to cause wasting of the testicles, reproductive changes, infertility, and changes to kidney function.  Phenoxyethanol is also a category 2 carcinogen, meaning that it is suspected to induce cancer or increase its incidence.

n.    **Glycerin** is a factory-produced texturizer that is created by complex processing.  It is recognized by federal regulations as synthetic.  *See* 7 C.F.R. § 205.605(b).  It is commonly used as a filler and thickening agent.  It requires multiple processing

9

steps in an industrial environment to create Glycerin.  Therefore, it cannot be described as "natural."  A technical evaluation report compiled by the USDA AMS Agricultural Analytics Division for the USDA National Organic Program explains that Glycerin is "produced by a hydrolysis of fats and oils" and is listed in the USDA Organic Program's National List as a "synthetic nonagricultural (nonorganic) substance."  The same report lists several methods of producing Glycerin, each of which involve numerous steps that include the use of high temperatures and pressure and purification to get an end product.

| Table 2 Processes for producing glycerin by hydrolysis of fats and oils[10] | |
|---|---|
| Lemmens Fryer's Process | Oil or fat is subjected in an autoclave to the conjoint action of heat and pressure (about 100 PSI) in the presence of an emulsifying and accelerating agent, *e.g.* zinc oxide or hydroxide (sodium hydroxide can be substituted) for about eight hours.  The strong solution of glycerin formed is withdrawn and replaced by a quantity of hot, clean and preferably distilled water equal to about one third to one fourth of the weight of the original charge of oil or fat and treatment continued for an additional four hours.  The dilute glycerin obtained from the latter part of the process is drawn off and used for the initial treatment of the further charge of oil or fat. |
| Budde and Robertson's Process | The oils or fats are heated and mechanically agitated with water and sulphuric acid gas, under pressure in a closed vessel or autoclave. The advantage claimed for the process are that the contents of the vessel are free from foreign matter introduced by reagents and need no purification; that the liberated |

---

[10]

https://www.ams.usda.gov/sites/default/files/media/Glycerin%20Petition%20to%20remove%20TR%202013.pdf

| | glycerin is in the form of a pure and concentrated solution; that no permanent emulsion is formed and that the fatty acids are not discolored. |
|---|---|
| Ittner's Process | Coconut oil is kept in an autoclave in the presence of water at 70 atmospheres pressure and 225-245oC temperature and split into fatty acids and glycerin, both being soluble under these conditions in water.  The glycerin solution separates in the bottom of the autoclave.  The aqueous solution contains at the end of the splitting process more than 30 percent glycerin. |
| Continuous High Pressure Hydrolysis | In this process a constant flow of fat is maintained flowing upward through an autoclave column tower against a downward counterflow of water at a pressure of 600 PSI maintained at temperature of 480-495oF. Under these conditions, the fat is almost completely miscible in water and the hydrolysis take place in a very short time. The liberated fatty acids, washed free of glycerin by the downward percolating water, leave the top of the column and pass through a flash tank while the liberated glycerin dissolves in the downward flow of water and is discharged from the bottom of the tower into the sweet-water storage tank. |

12.     Whether Defendant's marketing and advertising of the Products as natural is deceptive is judged by whether it would deceive or mislead a reasonable person.  To assist in ascertaining what a reasonable consumer believes the term "natural" means, one can look to the regulatory agencies for their guidance.

13.     In 2013, the United States Department of Agriculture ("USDA") issued a Draft Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic (Natural). In accordance with this decision tree, a substance is natural—as opposed to synthetic—if: (a) it is manufactured, produced, or extracted from a natural source (i.e. naturally occurring mineral or

biological matter); (b) it has not undergone a chemical change (i.e. a process whereby a substance is transformed into one or more other distinct substances) so that it is chemically or structurally different than how it naturally occurs in the source material; or (c) the chemical change was created by a naturally occurring biological process such as composting, fermentation, or enzymatic digestion or by heating or burning biological matter.  **(Exhibit A).**

14.    Congress has defined "synthetic" to mean "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plants, animals, or mineral sources . . ."  7 U.S.C. § 6502 (21).

15.    Surveys and other market research, including expert testimony Plaintiff intends to introduce, will demonstrate that the term "natural" is misleading to a reasonable consumer because the reasonable consumer believes that the term "natural," when used to describe goods such as the Products, means that the goods do not contain synthetic ingredients.

16.    Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale.  Consumers would not know the true nature of the ingredients merely by reading the ingredients label.

17.    Discovering that the ingredients are not natural and are actually synthetic requires a scientific investigation and knowledge of chemistry beyond that of the average consumer.  That is why, even though the ingredients listed above are identified on the back of the Products' packaging in the ingredients listed, the reasonable consumer would not understand – nor are they expected to understand - that these ingredients are synthetic.

18.    Moreover, the reasonable consumer is not expected or required to scour the ingredients list on the back of the Products in order to confirm or debunk Defendant's "natural" claims.

19.     Defendant did not disclose that the above listed ingredients are synthetic ingredients.  A reasonable consumer understands Defendant's representations to mean that the Products are natural and do not contain synthetic ingredients.

20.     Defendant has thus violated, *inter alia*, NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label or other thing, containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article, which to their knowledge is falsely described or indicated upon any such package, or vessel containing the same, or label thereupon, in any of the particulars specified.

21.     Consumers rely on advertising representations and information in making purchasing decisions.

22.     The marketing of the Products as natural on the Defendant's website, labeling and the in-store displays of all of the Products, throughout the Class Period, evidences Defendant's awareness that "natural" claims are material to consumers.

23.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

24.     Plaintiff and the Class members reasonably relied to their detriment on Defendant's misleading representations and omissions.

25.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class members.

13

26.    In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for Products advertised as natural over comparable products not so advertised.

27.    As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class members in that they:

   a.  Paid a sum of money for Products that were not what Defendant represented;

   b.  Paid a premium price for Products that were not what Defendant represented;

   c.  Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted; and

   d.  Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented.

28.    Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class members would not have been willing to pay the same amount for the Products they purchased, and, consequently, Plaintiff and the Class members would not have been willing to purchase the Products.

29.    Plaintiff and the Class members paid for Products that were "natural" but received Products that contained synthetic ingredients. The Products Plaintiff and the Class members received were worth less than the Products for which they paid.

30.    Based on Defendant's misleading and deceptive representations, Defendant was able to, and did, charge a premium price for the Products over the cost of competitive products not advertised as natural.

31.     Plaintiff and the Class members all paid money for the Products. However, Plaintiff and the Class members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and the Class members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

## JURISDICTION AND VENUE

32.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of Dutchess County, New York, Defendant Tarte, Inc. is a citizen of the State of New York; more than two-thirds of the class members reside outside the State of New York; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

33.     This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in New York, and because Defendant conducts and transacts business in the State of New York, contracts to supply goods within the State of New York, and supplies goods within the State of New York.

34.     Venue is proper because Plaintiff and many Class Members reside in the Southern District of New York, and throughout the State of New York.  A substantial part of the events or omissions giving rise to the classes' claims occurred in this District.

## PARTIES

### Plaintiff

35.    Plaintiff is an individual consumer who, at all times material hereto, was a citizen of Dutchess County, New York.  During the Class Period Plaintiff purchased the Products at a Sephora retail store in Poughkeepsie, New York.  The in-store display stands for the Products Plaintiff purchased contained the representation that they were natural.  Plaintiff believes that products which are advertised as natural do not contain synthetic ingredients.  Plaintiff believes a synthetic ingredient is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources.  If the Products were actually natural as represented on the Products' in-store display stand and on Defendant's website, Plaintiff would purchase the Products in the immediate future.

36.    Had Defendant not made the false, misleading, and deceptive representation that the Products were natural, Plaintiff would not have been willing to pay the same amount for the Products, and, consequently, she would not have been willing to purchase the Products.  Plaintiff purchased, purchased more of, and/or paid more for, the Products than she would have had she known the truth about the Products.  Since the Products Plaintiff received were worth less than the Products for which she paid, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

### Defendant

37.    Defendant Tarte, Inc. is a corporation with its principal place of business in New York, New York.  Defendant manufactures, markets, advertises and distributes the Products throughout the United States.  Defendant created and/or authorized the false, misleading and deceptive advertisements, website, labeling and in-store displays for the Products.

16

## CLASS ALLEGATIONS

38.     Plaintiff brings this matter on behalf of herself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and advertising practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is suitable for class-wide resolution, including injunctive relief.

39.     The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period (the "Class").

40.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the State of New York at any time during the Class Period (the "New York Subclass").

41.     The Class and New York Subclass shall be referred to collectively throughout the Complaint as the "Class."

42.     The Class should be certified as a class action under Rule 23(a) and 23(b)(3), because it satisfies the requirements of numerosity, commonality, typicality, adequacy, predominance and superiority because:

43.     Numerosity:  Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

44.     Commonality:  The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.     Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

17

b.    Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

c.    Whether Defendant made false and/or misleading statements to the Class and the public concerning the contents of their Products;

d.    Whether Defendant's false and misleading statements concerning their Products were likely to deceive the public;

e.    Whether Plaintiff and the Class are entitled to injunctive relief; and

f.    Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

45.    Typicality: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Defendant's Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

46.    Adequacy: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent; her consumer fraud claims are common to all members of the Class and she has a strong interest in vindicating her rights; she has retained counsel competent and experienced in complex class action litigation; and they intend to vigorously prosecute this action.

47.    Predominance:  Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issue because no inquiry into

individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and advertising practices.

48.    <u>Superiority</u>:  A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.    The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.    The individual claims of the Class Members are relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.    When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.    Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.    This class action will assure uniformity of decisions among Class Members;

g.    The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.      Class Members' interests in individually controlling the prosecution of separate

actions is outweighed by their interest in efficient resolution by single class

action; and

i.      It would be desirable to concentrate in this single venue the litigation of all Class

Members who were induced by Defendant's uniform false advertising to purchase

their Products as being natural.

49.      Accordingly, this Class is properly brought and should be maintained as a class

action under Rules 23(a) and 23(b)(3).

## **INJUNCTIVE CLASS RELIEF**

50.      Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-

wide injunctive relief.  Here, Defendant has engaged in conduct resulting in misleading

consumers about ingredients in its Products.  Since Defendant's conduct has been uniformly

directed at all consumers in the United States, and the conduct continues presently, injunctive

relief on a class-wide basis is a viable and suitable solution to remedy Defendant's continuing

misconduct.  Plaintiff would purchase the Products again if the ingredients were changed so that

they indeed were natural.

51.      The injunctive Class is properly brought and should be maintained as a class

action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality,

typicality, and adequacy because:

a.      <u>Numerosity</u>:  Individual joinder of the injunctive Class Members would be wholly

impracticable.  Defendant's Products have been purchased by thousands of people

throughout the United States;

20

b. <u>Commonality</u>: Questions of law and fact are common to members of the Class. Defendant's misconduct was uniformly directed at all consumers. Thus, all members of the Class have a common cause against Defendant to stop their misleading conduct through an injunction. Since the issues presented by this injunctive Class deal exclusively with Defendant's misconduct, resolution of these questions would necessarily be common to the entire Class. Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

    i.     Resolution of the issues presented in the 23(b)(3) class;

    ii.    Whether members of the Class will continue to suffer harm by virtue of Defendant's deceptive product marketing and advertising; and

    iii.   Whether, on equitable grounds, Defendant should be prevented from continuing to deceptively market their Products as being natural.

c. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the injunctive Class because her claims arise from the same course of conduct (*i.e.* Defendant's deceptive and misleading marketing and advertising practices). Plaintiff is a typical representative of the Class because, like all members of the injunctive Class, she purchased Defendant's Products which were sold unfairly and deceptively to consumers throughout the United States.

d. <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the injunctive Class. Her consumer protection claims are common to all members of the injunctive Class and she has a strong interest in vindicating her rights. In addition, Plaintiff and the Class are represented by counsel who is

21

competent and experienced in both consumer protection and class action

litigation.

52.     The injunctive Class is properly brought and should be maintained as a class

action under Rule 23(b)(2) because Plaintiff seeks injunctive relief on behalf of the Class

Members on grounds generally applicable to the entire injunctive Class.  Certification under Rule

23(b)(2) is appropriate because Defendant has acted or refused to act in a manner that applies

generally to the injunctive Class (*i.e.* Defendant has marketed their Products using the same

misleading and deceptive advertising to all of the Class Members).  Any final injunctive relief or

declaratory relief would benefit the entire injunctive Class as Defendant would be prevented

from continuing their misleading and deceptive marketing practices and would be required to

honestly disclose to consumers the nature of the contents of their Products.  Plaintiff would

purchase the Products again if the ingredients were changed so that they indeed were natural.

**FIRST CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 349**
**(On Behalf of Plaintiff and New York Subclass Members)**

53.     Plaintiff repeats and realleges each and every allegation contained in all the

foregoing paragraphs as if fully set forth herein.

54.     New York General Business Law Section 349 ("GBL § 349") declares unlawful

"[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the

furnishing of any service in this state . . .".

55.     The conduct of Defendant alleged herein constitutes recurring, "unlawful"

deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York

Subclass Members seek monetary damages and the entry of preliminary and permanent

injunctive relief against Defendant, enjoining them from inaccurately describing, advertising, marketing, and promoting the Products.

56.    There is no adequate remedy at law.

57.    Defendant misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

58.    Defendant's improper consumer-oriented conduct—including marketing and advertising the Products as being natural —is misleading in a material way in that it, inter alia, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have.  Defendant made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

59.    Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for products that were—contrary to Defendant's representations— not natural.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

60.    Defendant's advertising and Products' in-store displays induced the Plaintiff and the New York Subclass Members to buy Defendant's Products and to pay a premium price for them.

61.    Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

62.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, compensatory, treble

23

and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by

means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

### SECOND CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 350
**(On Behalf of Plaintiff and the New York Subclass Members)**

63.      Plaintiff repeats and realleges each and every allegation contained in all the

foregoing paragraphs as if fully set forth herein.

64.      N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in
> the furnishing of any service in this state is hereby declared unlawful.

65.      N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the
> kind, character, terms or conditions of any employment opportunity if
> such advertising is misleading in a material respect.  In determining
> whether any advertising is misleading, there shall be taken into account
> (among other things) not only representations made by statement, word,
> design, device, sound or any combination thereof, but also the extent to
> which the advertising fails to reveal facts material in the light of such
> representations with respect to the commodity or employment to which the
> advertising relates under the conditions proscribed in said advertisement,
> or under such conditions as are customary or usual . . .

66.      Defendant's in-store displays, labeling and advertisements contain untrue and

materially misleading statements concerning Defendant's Products inasmuch as they

misrepresent that the Products are natural.

67.      Plaintiff and the New York Subclass Members have been injured inasmuch as

they relied upon the in-store displays and advertising and paid a premium for the Products which

were—contrary to Defendant's representations—not natural.  Accordingly, Plaintiff and the New

York Subclass Members received less than what they bargained and/or paid for.

24

68.    Defendant's advertising, and the Products' in store displays induced the Plaintiff and the New York Subclass Members to buy Defendant's Products.

69.    Defendant made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

70.    Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

71.    Defendant made the material misrepresentations described in this Complaint in Defendant's advertising, and on the Products' in-store displays.

72.    Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

73.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## THIRD CAUSE OF ACTION
## VIOLATION OF STATE CONSUMER PROTECTION STATUTES
### (On Behalf of Plaintiff and All Class Members)

74.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

75.    Plaintiff and Class Members have been injured as a result of Defendant's violations of the following state consumer protection statutes, which also provide a basis for redress to Plaintiff and Class Members based on Defendant's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

76.     Defendant's conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the following jurisdictions:

a.     **Alaska:**  Defendant's practices were and are in violation of Alaska's Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.*

b.     **Arizona:**  Defendant's practices were and are in violation of Arizona's Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq*.

c.     **Arkansas:**  Defendant's practices were and are in violation of Arkansas Code Ann. § 4-88-101, *et seq.*

d.     **California:**  Defendant's practices were and are in violation of California Consumer Legal Remedies Act, Civil Code § 1750, *et seq*., and California's Unfair Competition Law, California Business and Professions Code § 17200, *et seq*., and California's False Advertising Law, California Business and Professions Code § 17500, *et seq.*

e.     **Colorado**:  Defendant's practices were and are in violation of Colorado's Consumer Protection Act, Colo. Rev. Stat. §§ 61-1-101, *et seq.*

f.     **Connecticut:**  Defendant's practices were and are in violation of Connecticut's Gen. Stat. § 42-110a, *et seq.*

g.     **Delaware:**  Defendant's practices were and are in violation of Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511, *et seq.* and the Deceptive Trade Practices Act, Del. Code Ann. tit. 6, § 2531, *et seq.*

h.     **District of Columbia:**  Defendant's practices were and are in violation of the District of Columbia's Consumer Protection Act, D.C. Code § 28-3901, *et seq.*

i.      **Florida:**  Defendant's practices were and are in violation of the Florida Deceptive

and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*

j.      **Hawaii:**  Defendant's practices were and are in violation of the Hawaii's Uniform

Deceptive Trade Practices Act, Haw. Rev. Stat. § 481A-1, *et seq.* and Haw. Rev.

Stat. § 480-2.

k.      **Idaho:**  Defendant's practices were and are in violation of Idaho's Consumer

Protection Act, Idaho Code Ann. § 48-601, *et seq.*

l.      **Illinois:**  Defendant's acts and practices were and are in violation of Illinois'

Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat.

505/2; and Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2.

m.      **Indiana:**  Defendant's practices were and are in violation of Indiana's Deceptive

Consumer Sales Act, Ind. Code Ann. § 24-5-0.5-1, *et seq.*

n.      **Kansas:**  Defendant's practices were and are in violation of Kansas's Consumer

Protection Act, Kat. Stat. Ann. § 50-623, *et seq*.

o.      **Kentucky:**  Defendant's practices were and are in violation of Kentucky's

Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*

p.      **Maine:**  Defendant's practices were and are in violation of the Maine Unfair

Trade Practices Act, 5 Me. Rev. Stat. Ann. Tit. 5, § 205-A, *et seq*. and 10 Me.

Rev. Stat. Ann. § 1101, *et seq*.

q.      **Maryland:**  Defendant's practices were and are in violation of Maryland's

Consumer Protection Act, Md. Code Ann. Com. Law § 13-101, *et seq*.

r.   **Massachusetts:**  Defendant's practices were unfair and deceptive acts and practices in violation of Massachusetts' Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 2.

s.   **Michigan:**  Defendant's practices were and are in violation of Michigan's Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq.*

t.   **Minnesota:**  Defendant's practices were and are in violation of Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* and the Unlawful Trade Practices law, Minn. Stat. § 325D.09, *et seq.*

u.   **Missouri:**  Defendant's practices were and are in violation of Missouri's Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*

v.   **Nebraska:**  Defendant's practices were and are in violation of Nebraska's Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.* and the Uniform Deceptive Trade Practices Act, § 87-302, *et seq.*

w.   **Nevada:**  Defendant's practices were and are in violation of Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0903 and 41.600.

x.   **New Hampshire:**  Defendant's practices were and are in violation of New Hampshire's Regulation of Business Practices for Consumer Protection, N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*

y.   **New Jersey:**  Defendant's practices were and are in violation of New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*

z.   **New Mexico:**  Defendant's practices were and are in violation of New Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*

aa.    **North Carolina:** Defendant's practices were and are in violation of North Carolina's Unfair Deceptive Trade Practices Act, N.C. Gen. Stat. Ann. § 75-1, *et seq*.

bb.    **North Dakota:** Defendant's practices were and are in violation of North Dakota's Unlawful Sales or Advertising Practices law, N.D. Cent. Code § 51-15-01, *et seq.*

cc.    **Ohio:** Defendant's practices were and are in violation of Ohio's Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, *et seq.* and Ohio's Deceptive Trade Practices Act. Ohio Rev. Code Ann. § 4165.01, *et seq.*

dd.    **Oklahoma:** Defendant's practices were and are in violation of Oklahoma's Consumer Protection Act, Okla. Stat. Ann. tit. 15 § 751, *et seq.*, and Oklahoma's Deceptive Trade Practices Act, Okla. Stat. Ann. tit. 78 § 51, *et seq.*

ee.    **Oregon:** Defendant's practices were and are in violation of Oregon's Unlawful Trade Practices law, Or. Rev. Stat. § 646.605, *et seq.*

ff.    **Pennsylvania:** Defendant's practices were and are in violation of Pennsylvania's Unfair Trade Practice and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et seq*.

gg.    **Rhode Island:** Defendant's practices were and are in violation of Rhode Island's Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*

hh.    **South Dakota:** Defendant's practices were and are in violation of South Dakota's Deceptive Trade Practices and Consumer Protection Act, S.D. Codified Laws § 37-24-1, *et seq.*

ii.    **Texas:**  Defendant's practices were and are in violation of Texas' Deceptive

Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41,

*et seq.*

jj.    **Utah:**  Defendant's practices were and are in violation of Utah's Consumer Sales

Practices Act, Utah Code Ann. § 13-11-1, *et seq.*, and Utah's Truth in Advertising

Law, Utah Code Ann. § 13-11a-1, *et seq.*

kk.    **Vermont:**  Defendant's practices were and are in violation of Vermont's

Consumer Fraud Act, Vt. Stat. Ann. tit. 9 § 2451, *et seq.*

ll.    **Washington:**  Defendant's practices were and are in violation of Washington

Consumer Protection Act, Wash. Rev. Code Ann. § 19.86, *et seq.*

mm.    **West Virginia:**  Defendant's practices were and are in violation of West

Virginia's Consumer Credit and Protection Act, W. Va. Code § 46A-6-101, *et

seq.*

*nn.*    **Wisconsin:**  Defendant's practices were and are in violation of Wisconsin's

Consumer Act, Wis. Stat. §421.101, *et seq.*

oo.    **Wyoming:**  Defendant's practices were and are in violation of Wyoming's

Consumer Protection Act, Wyo. Stat. Ann. §40-12-101, *et seq.*

77.    Defendant violated the aforementioned states' unfair and deceptive acts and

practices laws by representing that the Products are natural.

78.    Contrary to Defendant's representations, the Products are not natural.

79.    Defendant's misrepresentations were material to Plaintiff's and Class Members'

decision to pay a premium for the Products.

30

80.    Defendant made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

81.    As a result of Defendant's violations of the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members paid a premium for the Products.

82.    As a result of Defendant's violations, Defendant has been unjustly enriched.

83.    Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

## FOURTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY
### (On Behalf of Plaintiff and All Class Members)

84.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

85.    Defendant provided the Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products are natural.

86.    The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

87.    These affirmations of fact became part of the basis for the bargain and were material to the Plaintiff's and Class Members' transactions.

88.    Plaintiff and Class Members reasonably relied upon the Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

31

89.     Within a reasonable time after they knew or should have known of Defendant's breach, Plaintiff, on behalf of herself and Class Members, placed Defendant on notice of their breach, giving Defendant an opportunity to cure their breach, which they refused to do.

90.     Defendant breached the express warranty because the Products are not natural because they contain synthetic ingredients.

91.     Defendant thereby breached the following state warranty laws:

    a.     Code of Ala. § 7-2-313;

    b.     Alaska Stat. § 45.02.313;

    c.     A.R.S. § 47-2313;

    d.     A.C.A. § 4-2-313;

    e.     Cal. Comm. Code § 2313;

    f.     Colo. Rev. Stat. § 4-2-313;

    g.     Conn. Gen. Stat. § 42a-2-313;

    h.     6 Del. C. § 2-313;

    i.     D.C. Code § 28:2-313;

    j.     Fla. Stat. § 672.313;

    k.     O.C.G.A. § 11-2-313;

    l.     H.R.S. § 490:2-313;

    m.     Idaho Code § 28-2-313;

    n.     810 I.L.C.S. 5/2-313;

    o.     Ind. Code § 26-1-2-313;

    p.     Iowa Code § 554.2313;

    q.     K.S.A. § 84-2-313;

r.  K.R.S. § 355.2-313;

s.  11 M.R.S. § 2-313;

t.  Md. Commercial Law Code Ann. § 2-313;

u.  106 Mass. Gen. Laws Ann. § 2-313;

v.  M.C.L.S. § 440.2313;

w.  Minn. Stat. § 336.2-313;

x.  Miss. Code Ann. § 75-2-313;

y.  R.S. Mo. § 400.2-313;

z.  Mont. Code Anno. § 30-2-313;

aa.  Neb. Rev. Stat. § 2-313;

bb.  Nev. Rev. Stat. Ann. § 104.2313;

cc.  R.S.A. 382-A:2-313;

dd.  N.J. Stat. Ann. § 12A:2-313;

ee.  N.M. Stat. Ann. § 55-2-313;

ff.  N.Y. U.C.C. Law § 2-313;

gg.  N.C. Gen. Stat. § 25-2-313;

hh.  N.D. Cent. Code § 41-02-30;

ii.  II. O.R.C. Ann. § 1302.26;

jj.  12A Okl. St. § 2-313;

kk.  Or. Rev. Stat. § 72-3130;

ll.  13 Pa. Rev. Stat. § 72-3130;

mm.  R.I. Gen. Laws § 6A-2-313;

nn.  S.C. Code Ann. § 36-2-313;

oo.    S.D. Codified Laws, § 57A-2-313;

pp.    Tenn. Code Ann. § 47-2-313;

qq.    Tex. Bus. & Com. Code § 2.313;

rr.    Utah Code Ann. § 70A-2-313;

ss.    9A V.S.A. § 2-313;

tt.    Va. Code Ann. § 59.1-504.2;

uu.    Wash. Rev. Code Ann. § 6A.2-313;

vv.    W. Va. Code § 46-2-313;

ww.    Wis. Stat. § 402.313;

xx.    Wyo. Stat. § 34.1-2-313.

92.    As a direct and proximate result of Defendant's breach of express warranty,

Plaintiff and Class Members were damaged in the amount of the price they paid for the Products,

or in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE MAGNUSON-MOSS**
**WARRANTY ACT, 15 U.S.C. § 2301 *et seq.***
**(On Behalf of Plaintiff and All Class Members)**

93.    Plaintiff repeats and realleges each and every allegation contained in the

foregoing paragraphs as if fully set forth herein.

94.    Plaintiff brings this claim individually and on behalf of all members of the Class.

Upon certification, the Class will consist of more than 100 named Plaintiffs.

95.    The Magnuson-Moss Warranty Act provides a federal remedy for consumers who

have been damaged by the failure of a supplier or warrantor to comply with any obligation under

a written warranty or implied warranty, or other various obligations established under the

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.

96.    The Products are "consumer products" within the meaning of the Magnuson-Moss

Warranty Act, 15 U.S.C. § 2301(1).

97.    Plaintiff and other members of the Class are "consumers" within the meaning of

the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

98.    Defendant is "supplier" and "warrantor" within the meaning of the Magnuson-

Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

99.    Defendant represented in writing that the Products are natural.

100.    These statements were made in connection with the sale of the Products and relate

to the nature of the Products and affirm and promise that the Products are as represented and

defect free and, as such, are "written warranties" within the meaning of the Magnuson-Moss

Warranty Act, 15 U.S.C. § 2301(6)(A).

101.    As alleged herein, Defendant breached the written warranty by selling consumers

Products that are not natural.

102.    The Products do not conform to the Defendant's written warranty and therefore

violate the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.  Consequently, Plaintiff and

the other members of the Class have suffered injury and are entitled to damages in an amount to

be proven at trial.

## SIXTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY
### (On Behalf of Plaintiff and All Class Members)

103.    Plaintiff repeats and realleges each and every allegation contained in the

foregoing paragraphs as if fully set forth herein.

104.    Defendant is in the business of manufacturing, distributing, marketing and advertising the Products.

105.    Under the Uniform Commercial Code's implied warranty of merchantability, the Defendant warranted to Plaintiff and Class Members that the Products are natural.

106.    Defendant breached the implied warranty of merchantability in that Defendant's Products' ingredients deviate from the in-store displays and Products' description, and reasonable consumers expecting a product that conforms to its marketing and advertising would not accept the Defendant's Products if they knew that they actually contained synthetic ingredients, that are not natural.

107.    Within a reasonable amount of time after the Plaintiff discovered that the Products contain synthetic ingredients, Plaintiff notified the Defendant of such breach.

108.    The inability of the Defendant's Products to meet the description on Defendant's website, labeling, in-store displays, and other advertising materials was wholly the Defendant's fault and without Plaintiff's or Class Members' fault or neglect, and was solely due to the Defendant's manufacture and distribution of the Products to the public.

109.    As a result of the foregoing, Plaintiff and Class Members have been damaged in the amount paid for the Defendant's Products, together with interest thereon from the date of purchase.

<u>**SEVENTH CAUSE OF ACTION**</u>
<u>**BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**</u>
**(On Behalf of Plaintiff and All Class Members)**

110.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

111.    Defendant knew or had reason to know that the Plaintiff and other Class Members were buying their Products with the specific purpose of buying products that contained exclusively natural ingredients.

112.    Plaintiff and the other Class Members, intending to use wholly natural products, relied on the Defendant in selecting their Products to fit their specific intended use.

113.    Defendant held themselves out as having particular knowledge of the Defendant's Products' ingredients.

114.    Plaintiff's and Class Members' reliance on Defendant in selecting Defendant's Products to fit their particular purpose was reasonable given Defendant's claims and representations in its advertising, and in-store displays concerning the Products' ingredients.

115.    Plaintiff and the other Class Members' reliance on Defendant in selecting Defendant's Products to fit their particular use was reasonable given Defendant's particular knowledge of the Products it manufactures and distributes.

116.    As a result of the foregoing, Plaintiff and Class Members have been damaged in the amount paid for the Defendant's Products, together with interest thereon from the date of purchase.

**EIGHTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and All Class Members)**

117.    Plaintiff repeats and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

118.    Defendant, through misleading representations and omissions, enticed Plaintiff and members of the Class to purchase the Products.

119.    Plaintiff and the Class members conferred a benefit on Defendant by purchasing the Products.

120.    By its wrongful acts, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

121.    Defendant benefitted financially from the revenues and other compensation tied to the sale of the Products, which was unjust in light of Defendant's wrongful conduct.

122.    Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiff and the Class as the result of its deceptive marketing and advertising practices.

123.    Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiff and the Class members is unjust and inequitable, Plaintiff seeks restitution from, and an order from the Court disgorging all profits, benefits and other compensation obtained by Defendant due to its wrongful conduct.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a)    Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b)    Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct their practices and to comply with consumer protection statutes nationwide, including New York consumer protection laws;

(c)    Awarding monetary damages, including treble damages;

(d)    Awarding punitive damages;

(e)    Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(f)    Granting such other and further relief as the Court may deem just and proper.


Dated:  December 14, 2018

                                              **THE SULTZER LAW GROUP P.C.**

                                              Jason P. Sultzer /s/
                              By: _____
                                                   Jason P. Sultzer, Esq.
                                                   Joseph Lipari, Esq.
                                                   Adam Gonnelli, Esq.
                                                   85 Civic Center Plaza, Suite 200
                                                   Poughkeepsie, NY 12601
                                                   Tel: (845) 483-7100
                                                   Fax: (888) 749-7747
                                                   sultzerj@thesultzerlawgroup.com

                                              *Counsel for Plaintiff and the Class*